[983 NYS2d 70]

In the Matter of JAMES P. DUFFY III (Admitted as JAMES PETER DUFFY III), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 2, 2014

### APPEARANCES OF COUNSEL

*Robert A. Green*, Hauppauge (*Robert H. Cabble* of counsel), for petitioner.

*James P. Duffy III*, Manhasset, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition, dated December 20, 2010, containing eight charges of professional misconduct. By decision and order on motion of this Court dated February 3, 2012, the respondent was barred from re-litigating any of the factual allegations raised in charges one through four of the verified petition, based upon the doctrine of collateral estoppel, and referred the matter to the Honorable Jerome M. Becker, as Special Referee, to hear and report. After a hearing, the Special Referee sustained charges one through four, and charges five through seven. Charge eight was withdrawn. The Grievance Committee now moves for an order confirming the report of the Special Referee, and imposing such discipline upon the respondent as the Court deems just and proper. The respondent opposes the Grievance Committee's motion.

Charges one through four emanate from a common set of factual allegations, which the respondent was precluded from re-litigating. The respondent and his law firm, Berg & Duffy,

were defendants in an action entitled *37 Park Dr. S., Inc. v Duffy,* commenced in the Supreme Court, Westchester County under index No. 16967/04 (*see 37 Park Dr. S., Inc. v Duffy,* 28 Misc 3d 1234[A], 2007 NY Slip Op 52671[U] [Sup Ct, Westchester County 2007]). The plaintiff in that action sought damages against the respondent and his law firm in the sum of $137,853, plus interest, on the basis of causes of action alleging, inter alia, failing to account, unjust enrichment, breach of contract, and breach of fiduciary duty. The action was tried, without a jury, in the Supreme Court, Westchester County, before the Honorable Alan Scheinkman.

On or about December 4, 2007, the Supreme Court issued a decision after trial which was against the respondent and his law firm, in the principal sum of $137,853, with prejudgment interest from July 1, 2000. The court found that in or around 1997, the respondent and his law firm, Berg & Duffy, were retained to form a corporate entity entitled 37 Park Drive South, Inc. (hereinafter 37 Park) on behalf of Cristoballo, S.A. (hereinafter Cristoballo), and Robert Shamis, a foreign national. At or about that time, the respondent was the sole partner in the law firm of Berg & Duffy.

The respondent formed 37 Park, and was made president, and a director thereof. He, and an associate attorney in his law firm, were the signatories on 37 Park's checking account, and the account statements were sent to the respondent. 37 Park was a wholly-owned subsidiary of Cristoballo, which had an address in San Jose, Costa Rica, and operated an irrevocable trust established by Shamis for his daughters. Cristoballo was managed by Mikkel Lind, who was an officer and director of Cristoballo, as well as a certified fiduciary in Lichtenstein.

In or around August 1997, at the direction of Cristoballo, through Lind, the respondent arranged to have 37 Park acquire title to a residential property located at 37 Park Drive South in Rye. An arrangement was made to have another company owned by Shamis, Loyaltex Apparel Company, Ltd., rent the property from 37 Park. The respondent and his law firm provided legal services in connection with the establishment of 37 Park, the acquisition of the property, and the leasing arrangements. He was paid in full for these services.

Pursuant to the leasing arrangements, the monthly rental payment was established at an amount slightly greater than the monthly amount due on the mortgage. The property was occupied by Shamis, his family, and a small number of domestic

employees. The respondent was responsible for certain ministerial services such as collecting the rental payments, making monthly mortgage payments, and making other payments in connection with the routine maintenance and operation of the property. There was no written agreement as to how the respondent and his law firm would be compensated for these continuing services.

By letter to Lind dated September 8, 1997, the respondent proposed a fee of $130 per month for his continuing services to 37 Park. Legal work for maintaining the corporation in good order, and other legal work, would be billed separately. Lind agreed to the arrangement. The respondent thereafter sent periodic billing invoices, until in or about January 1999, to 37 Park, care of Lind, charging hourly rates for work performed on behalf of 37 Park.

Subsequently, it was determined that 37 Park would renovate the premises. The respondent was involved, among other things, in the coordination and release of payments in connection with the renovations. Funds for the operation and maintenance of the premises, as well as for the renovations, were periodically deposited to 37 Park's account by Lind or Shamis. Other than payments of a recurring nature, pertaining to the routine operation of the premises, most larger disbursements or payments were made by the respondent only after review and approval by Lind or Shamis.

In or around October 1999, a fire caused damage to the property. Reconstruction of the premises was commenced, and the respondent was assigned the task of coordinating, and releasing payments for, reconstruction-related work, upon authorization from Lind or Shamis.

In and between March 2000 and September 2000, by periodic transactions through the 37 Park bank account, the respondent withdrew, or had transferred to himself or his law firm, the total sum of $137,853. In late 2000, Lind requested that the respondent provide documentary substantiation for $231,108.96 in payments, including the $137,853 to the respondent or his law firm. The respondent failed to provide any documentation supporting the withdrawal or transfer of $137,853 to himself or his law firm, and failed to refund those funds.

In or around March 2001, the respondent was removed as president of 37 Park. In November 2004, 37 Park commenced an action in the Supreme Court, Westchester County, against the respondent and his law firm, seeking, inter alia, to recover

damages in the sum of $137,853. During the nonjury trial, the respondent, and the other parties to the action, stipulated that the amount in question was $137,853.

In its December 4, 2007 decision after trial, the Supreme Court stated, in relevant part:

"DR 9-102 (c) of the Code of Professional Responsibility requires that attorneys maintain complete records of all funds of a client or third person coming into their possession and render appropriate accounts to the client or third person (22 NYCRR 1200.46 [c]). Plainly, that requirement was not observed by [the respondent]. While [the respondent] did provide, prior to this action, to an attorney then representing [37 Park], some explanations or accounting with respect to the larger amount of $231,108.96 [which was] initially questioned by Lind . . . , that material was not submitted to the Court, and it is apparent that no explanation of the $137,853 balance was ever provided. The Court notes that the request for an explanation was made less than two months after the last withdrawal and an accounting could surely have been provided. To the extent that [the respondent] would suggest that he later destroyed or failed to keep the records, it is clear that as of November 8, 2000, [the respondent] was on notice that he would be required to account" (*37 Park Dr. S., Inc. v Duffy*, 2007 NY Slip Op 52671[U], *18).

The Supreme Court determined that "37 Park [was] entitled to recover against [the respondent] and his law firm, on its causes of action for an accounting," and that "the Court would find that 37 Park [had] proven its case under the First and Fourth Causes of Action [sounding in accounting]," but for the applicable three-year statute of limitations barring recovery on this theory of liability (*id.* at *14, *19).

Alternatively, the Supreme Court determined that 37 Park could recover the $137,853 based on a theory of implied contract or unjust enrichment, to which a six-year statute of limitations applied. The court stated:

"[W]hile not directly pleaded by [37 Park], the Court finds, as a matter of fact, there was an agreement under which [the respondent] would not take out any funds from 37 Park's accounts without the express authorization of Lind or Shamis. Further-

more, even if there was no express agreement, the law would imply an agreement to return money where a party possesses money that equity and good conscience require the party not be permitted to retain, and which belongs to another. . . .

"Thus, the Court would, in the alternative to the accounting claims previously addressed . . . predicate its decision on the Third Cause of Action to the extent of finding that [the respondent] and his law firm breached the agreement to the extent of unauthorized withdrawals of $137,853. . . .

"[The respondent] owed the corporation a fiduciary obligation. The corporate accounts were entrusted to him upon a promise, inherent in the relationship, not to usurp them for his own benefit. Further, there was an express agreement that limited [the respondent's] entitlement to any funds from the corporation. [The respondent] has breached his promise and would be unjustly enriched if permitted to retain the funds in question" (id. at *19).

Judgment was entered on or about January 8, 2008. The judgment was affirmed by this Court in a decision and order dated June 23, 2009 (see 37 Park Dr. S., Inc. v Duffy, 63 AD3d 1040 [2009]). As of December 20, 2010, the respondent had failed to return the $137,853, or otherwise satisfy the judgment.

Charge one alleges that the respondent engaged in conduct that adversely reflects upon his fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge two alleges that the respondent failed to maintain complete records of all funds of a client or third person coming into his possession, or to render appropriate accounts to the client or third person, in violation of former Code of Professional Responsibility DR 9-102 (c) (22 NYCRR 1200.46 [c]).

Charge three alleges that the respondent failed to promptly pay or deliver to a client or third person, as requested by the client or third person, funds in his possession that the client or third person was entitled to, in violation of former Code of Professional Responsibility DR 9-102 (c) (22 NYCRR 1200.46 [c]).

Charge four alleges that the respondent misappropriated funds belonging to another person, which came into his possession incident to his practice of law, in violation of former Code

of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Charges five through seven emanate from a second common set of factual allegations. In 2005, Neil Fradkin was involved in a dispute with Manuela Cooperman concerning funds on deposit in an account in Cooperman's name maintained at Banque Monegasque de Gestion, which was located in Monaco. Fradkin entered into a settlement with Cooperman, under which Cooperman would transfer the funds to Fradkin.

By letter dated August 3, 2005, from attorney Barry S. Parker to the respondent, Parker confirmed a telephone conversation with the respondent pursuant to which Fradkin retained the respondent's services "relative to the retrieval of the funds currently on deposit with Banque Monegasque de Gestion in Monaco." Pursuant to the terms of the August 3, 2005 letter, Cooperman's representative was requested to contact the respondent's Monaco office to schedule an appointment. When the check was presented, the respondent would provide a written acknowledgment stating that he was duly authorized to act as Fradkin's attorney-in-fact, and was receiving the subject funds on Fradkin's behalf. The respondent would then "remit the check directly to Fradkin via Federal Express, DHL, or other similar delivery courier, together with his invoice for professional services." At all relevant times, the respondent maintained an office for his law firm in Monaco.

On or about August 12, 2005, the respondent appeared at the Banque Monegasque de Gestion in Monaco, and met with representatives of Cooperman. At the meeting, Cooperman's representatives gave the respondent an envelope containing $69,000 in United States currency. The respondent received those funds on behalf of his client, Fradkin.

After receiving the $69,000 on August 12, 2005, the respondent made four trips between the United States and Monaco, each time returning to the United States with $9,000 from the funds he came into possession of in Monaco. The respondent made remittances to Fradkin on or about October 4, 2005, November 1, 2005, November 29, 2005 and January 29, 2007, totaling $36,000, less legal fees. The respondent, however, remained in possession of the balance of Fradkin's funds, totaling $33,000. Fradkin, or his attorney, requested that the respondent account for the balance of the funds, and remit them to Fradkin. However, the respondent failed to provide an appropriate accounting to Fradkin regarding the balance of the funds, and failed to promptly pay or deliver those funds to Fradkin.

Charge five alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge six alleges that the respondent failed to maintain complete records of all funds of a client or third person coming into his possession, or to render appropriate accounts to the client or third person, in violation of former Code of Professional Responsibility DR 9-102 (c) (22 NYCRR 1200.46 [c]).

Charge seven alleges that the respondent failed to promptly pay or deliver to a client or third person funds in his possession, which the client or third person was entitled to receive, in violation of former Code of Professional Responsibility DR 9-102 (c) (22 NYCRR 1200.46 [c]).

We find that the Special Referee properly sustained charges one through four, as well as charges five through seven. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.

In determining an appropriate measure of discipline to impose, this Court has considered the character letters offered by the respondent. However, as the Special Referee noted, the respondent's mitigation evidence is countered by "the stark fact that he [has] displayed no remorse whatsoever for his misconduct. Rather, he [has] denied any allegations that his acts violated his ethical duties." Furthermore, we note that the respondent has failed to make restitution to either of his clients. The respondent has a prior disciplinary history consisting of two letters of caution.

Under the totality of the circumstances, the respondent is disbarred for his professional misconduct, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law.

ENG, P.J., RIVERA, SKELOS, DILLON and LEVENTHAL, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, James P. Duffy III, admitted as James Peter Duffy III, is disbarred, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, James P. Duffy III, admitted as James Peter Duffy III, shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, James P. Duffy III, admitted as James Peter Duffy III, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, James P. Duffy III, admitted as James Peter Duffy III, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).